# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

    **Plaintiff,**

v.

Case No. 6:23-cv-710-WWB-EJK

ALL FUNDS IN ANY FORM, INCLUDING
USDT OR ANY OTHER CRYPTOCURRENCY
OR FIAT PREVIOUSLY STORED IN OR
ACCESSIBLE VIA BINANCE ACCOUNT
BEARING USER ID #111070305,

ALL FUNDS IN ANY FORM, INCLUDING
USDT OR ANY OTHER CRYPTOCURRENCY
OR FIAT PREVIOUSLY STORED IN OR
ACCESSIBLE VIA BINANCE ACCOUNT
BEARING USER ID #68407402,

ALL FUNDS IN ANY FORM, INCLUDING
USDT OR ANY OTHER CRYPTOCURRENCY
OR FIAT PREVIOUSLY STORED IN OR
ACCESSIBLE VIA BINANCE ACCOUNT
BEARING USER ID #152160928,

    **Defendants.**

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or

Maritime Claims and Asset Forfeiture Actions, Plaintiff, the United States, brings

this complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1.      This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), all funds in any form, including USDT or any other cryptocurrency or fiat previously stored in or accessible via three individual Binance Holdings Limited (Binance) accounts (Defendant Funds) on the grounds that the funds are proceeds obtained from wire fraud offenses, in violation of 18 U.S.C. § 1343. In addition, the perpetrators of the fraud attempted to conceal and disguise the nature, location, source, control and ownership of the wire fraud proceeds by moving the proceeds through over a dozen cryptocurrency addresses, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Thus, the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.      This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.      Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent facts or omissions giving rise to the forfeiture occurred in this District.

2

5.    Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(i). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANT *IN REM*

6.    The Defendant Funds consist of:

   a.  all funds in any form, including USDT or any other cryptocurrency or fiat previously stored in or accessible via Binance account bearing User ID #111070305, herein referred to as "Defendant Account A";

   b.  all funds in any form, including USDT or any other cryptocurrency or fiat previously stored in or accessible via Binance account bearing User ID #68407402, herein referred to as "Defendant Account B"; and

   c.  all funds in any form, including USDT or any other cryptocurrency or fiat previously stored in or accessible via Binance account bearing User ID #152160928, herein referred to as "Defendant Account C."

7.    The funds were seized from Binance by the United States Secret Service on or about February 24, 2023; March 1, 2023; March 9, 2023; March 22, 2023; and April 5, 2023, pursuant to Federal seizure warrants after findings of probable cause that the funds constituted proceeds of wire fraud offenses and property involved in money laundering offenses.

3

8.     As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

9.     The Court's authority to order forfeiture of the proceeds of violations of 18 U.S.C. § 1343 (wire fraud) is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property, real or personal, which constitutes or is derived from proceeds from any offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offenses. A "specified unlawful activity," as defined in § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1). Specifically, § 1961(1) includes violations of 18 U.S.C. § 1343.

10.     The Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1956 is found in 18 U.S.C. § 981(a)(1)(A). Section 981(a)(1)(A) provides for the civil forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of § 1956, or any property traceable to such property.

11.     As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud offenses and property involved in money laundering offenses.

# FACTS

12.     As detailed below, this case concerns the theft of approximately $10 million in cryptocurrency by Sun Hao, Song Shijie Null, Cheng Han Hsieh, Chun Li Tsao, and potentially others through a wire fraud scheme affecting a victim in the Middle District of Florida that was uncovered by tracing the movement of the Defendant Funds through multiple addresses and wallets, including to addresses held in the Defendant Accounts.

## A.   The Fraud

13.     In approximately April 2022, Victim 1, a resident of Seminole County, was contacted on the communication application WhatsApp, by an individual who spoke Mandarin (Chinese) and claimed to have grown up in China. This individual introduced himself as Sun Hao. Victim 1 began communicating with Hao about his experiences growing up as a child in China. This resonated with Victim 1 because of her own family experiences. Hao told Victim 1 that he was the son of the managing director of Texas Pacific Group (TPG) of China, and the nephew of the managing director of China's World Gold Council. Hao claimed to be a cryptocurrency trader on numerous investment platforms. Based on shared common experiences, and the apparent knowledge Hao had in management and investments, Victim 1 replied back, and the relationship began to flourish. The communication continued to get more frequent and consequential. After a few weeks, Victim 1 eventually was convinced to invest money based off Hao's recommendations. Although initially weary of this seemingly random contact, Victim 1 was ultimately lured into a

5

relationship with Hao based on common interests, which included Asian culture and investment strategies. Hao offered Victim 1 an opportunity to join a gold futures investment portfolio named S&J Futures Ltd. and promised substantial gains.

14.     Victim 1 continued to communicate with Hao via WhatsApp. Hao provided Victim 1 with the photo below, claiming to be the individual in the photo. Further investigation has determined that the individual portrayed in the photo below is likely not the individual with whom Victim 1 was communicating. Specifically, investigators found the exact same picture on a Russian dating site with a profile name of "Alex."



15.     After investing approximately $10 million over a six-month time period, Victim 1 discovered that all of the investment platforms were a scam when she attempted to withdraw her funds but was unable to do so. A review of the blockchain and available records indicates that Hao and individuals conspiring with Hao

subsequently laundered the proceeds of the scheme through over a dozen cryptocurrency addresses.

16.     Over the first few months, Victim 1 was persuaded to invest in gold futures that Hao claimed would provide a high return on investment. Hao provided her via WhatsApp and text messages, the names and websites to three private equity companies: S&J Futures, Ltd., Eastpac Capital, Ltd. and Apten International, Ltd.

17.     Continuing in September 2021 and through March 2022, Hao advised Victim 1 to liquidate her investment accounts at E-Trade and TD AmeriTrade and to open cryptocurrency trading accounts at the following cryptocurrency exchange platforms: Coinbase, Bitstamp, and Kraken. Specifically, Victim 1 began liquidating her investment accounts on September 27, 2021. Over the next six months, Victim 1 continued to liquidate her investment accounts at the direction of Hao, specifically transferring $9,291,509.48 via 18 total transactions, with the last occurring on March 21, 2022. Hao explained how to move her liquated funds from her Wells Fargo Bank account onto the various cryptocurrency exchange platforms. Once Victim 1's funds were successfully deposited onto the cryptocurrency exchange platforms, she was instructed by Hao as to what cryptocurrency to purchase and where to send it.

18.     Victim 1 was in the Middle District Florida when she was communicating with Hao, depositing fiat currency onto the numerous cryptocurrency exchange platforms, and when she transferred the cryptocurrency to addresses given to her by Hao.

19.    Victim 1 did as Hao instructed her via WhatsApp and used her deposited fiat currency at the cryptocurrency exchanges to purchase Ether and/or USDT on the Ethereum blockchain. Once she purchased Ether and/or USDT, she was provided an Ether address for the tokens to be sent to. Hao told her that once she transferred the Ether and/or USDT tokens to the addresses provided, her funds would be inserted into the proper investment portfolio and the strategy should begin to produce high results on investments in a short time-period.

20.    Over the next few months, when Victim 1 would log onto the three private equity company webpages, she began to see what she believed were projections of her return-on-investment, which instilled confidence in her about Hao's legitimacy. Due to this apparent increase in her investment portfolio, she continued to invest additional capital. Victim 1 logged into the following webpages that are all now offline and reported as fraud sites: sjf-fx.com, apten.live, and eastpac.live. Investigation into these three webpages revealed additional fraud reports with similar schemes on the Federal Trade Commission's database as well the FBI's Internet Complaint Center, IC3.

21.    In March 2022, Victim 1 attempted to withdraw her funds from her respective investment accounts and was unable to do so. During this time-period, Victim 1 was concerned the economy was moving in the wrong direction and she was concerned about her investments in gold futures. Victim 1 then began to worry that she had been a victim of a cyber-crime. When Victim 1 confronted Hao initially about her desire to withdraw her funds, he was dismissive and reassured her the

problem was temporary. It was not much longer until she confronted Hao and told him she knew this was a scam. Hao responded to her by saying "Your government is not going to do anything," and "China is very strong now, the US would not dare go against or irritate China."

22.     Victim 1 lost $9,291,509.48 in a six-month timeframe, directly traceable to this cyber-crime.

**B. Cryptocurrency Tracing Analysis**

23.     The Defendant Accounts received funds directly traceable to Victim 1 and have been accessed from Thailand, Hong Kong, Great Britain, Northern Ireland, Philippines, Macao and Taiwan-based IP addresses.

24.     The majority of the fraudulent transfers were sent through a series of USDT wallet addresses before ultimately being deposited into accounts at Binance[1].

*Movement of Victim 1 Funds to Coinbase, Bitstamp, and Kraken*

25.     Beginning on September 27, 2021 and continuing through October 21, 2021, Victim 1 deposited a total of $3,121,419.48 into her Coinbase account via six wire transfers from her Wells Fargo Bank account ending in x6398. All this money had been converted to Ether tokens and sent to Ether addresses on the Ethereum blockchain.

---

[1] Binance Holdings Limited, which is registered in the Cayman Islands, owns and operates Binance.com, a cryptocurrency exchange that provides a platform for trading various cryptocurrencies and exchanging cryptocurrencies for fiat currencies.

26.     Beginning on November 3, 2021, and continuing through March 22, 2022, Victim 1 deposited a total of $4,170,000.00 into her Bitstamp account via nine wire transfers from her Wells Fargo account ending in x6398. All this money was converted to Ether and/or USDT tokens and sent to Ether addresses on the Ethereum blockchain.

27.     Beginning on January 14, 2022, and continuing through February 7, 2022, Victim 1 deposited a total of $2,000,000.00 to her Kraken account via three wire transfers from her Wells Fargo account ending in x6398. All this money had been converted to Ether and/or USDT tokens and sent to Ether addresses on the Ethereum blockchain.

28.     The deposits of Victim 1's Wells Fargo funds onto the Coinbase, Bitstamp, and Kraken cryptocurrency exchange platforms, the quick purchase of Ether and/or USDT tokens and the outgoing transactions were all at the direction of Hao.

### *Blockchain Tracing to the Defendant Accounts*

29.     This cyber-crime involved money laundering tactics common to evade law enforcement detection. Specifically, the suspects practiced three specific money laundering tactics in this scheme. The tactics practiced in this scheme are indicative of a money laundering scheme aimed at disguising the true origin of these wire fraud proceeds.

30.     First, Hao told Victim 1 to purchase Ether tokens instructed her to send them to a specific Ether token address. Once Victim 1 made the transaction and the

transaction was verified on the blockchain, Hao quickly converted the Ether tokens to USDT tokens (Tether). Hao's quick conversion from one token to another shows a deliberate attempt to disguise the true origins of the funds. Secondly, Hao's quick movement of USDT (Tether) tokens from one address to another, over the course of multiple addresses, while mixing other cryptocurrency along the way, is another tactic involved in money laundering to disguise the true origin of the funds. Lastly, Hao's use of peel chain tactics[2] show an organized effort to utilize numerous addresses, wallets, and cryptocurrency exchanges all in an attempt to disguise the true origin of the fraudulently obtained funds.

31.     Suspects will often utilize numerous cryptocurrency exchanges in an effort to disguise their true identities and allude law enforcement. In this specific scheme, Hao utilized numerous cryptocurrency exchanges to include Binance, Okex, FTX and Indodax. These cryptocurrency exchanges received cryptocurrency traceable to Victim 1's transactions. The Defendant Accounts received victim funds traceable to Victim 1's transactions.

### *Laundering Proceeds to Defendant Account A*

32.     Defendant Account A, held in the name of Song Shijie Null, was opened at the Binance cryptocurrency exchange on April 4, 2021, and contained cryptocurrency which is directly traceable on the Ethereum blockchain, to Victim 1's

---

[2] Peel chain is a technique used to launder large amounts of illegally obtained cryptocurrency by funding a long series of small transactions. In other words, a small amount is "peeled" from a person's holdings in a low-value transfer again and again, often through an exchange where it can be converted to fiat currency.

transactions associated with this scheme. In addition, Victim 1 was never told nor did she ever give permission for this individual to have access to her invested funds. The below picture was provided to Binance by the individual who opened Defendant Account A, as a part of Binance's global compliance procedures, specifically their Know Your Customer (KYC) policy and Anti-Money Laundering (AML) policy:



33.    According to documents provided by Bitstamp, on November 1, 2021, Victim 1 opened an account at Bitstamp, a cryptocurrency exchange. Starting on November 3, 2021, and continuing until March 3, 2022, at the direction of Hao, Victim 1 deposited $4,170,000.00 into her own Bitstamp account and used it to purchase Ethereum and USDT tokens.

34.    Specifically, two transactions from Victim 1's Bitstamp account, one on March 8, 2022 and one on March 19, 2022, can be linked to funds in Defendant Account A. The illustrations below demonstrate the movement of funds from the Victims' Bitstamp account to Defendant Account A. Each block of text along the

12

arrows depicted below indicates a deposit into an address, whereas the arrows represent "hops" between addresses. "Hops" are transfers from one USDT address to another. Diagrams 1 and 2 show the transactions involving Victim ETH and USDT funds both ending up in Defendant Account A after being comingled with other USDT while traversing more than twenty additional transactions on the blockchain.

*Diagram 1:*



13

*Diagram 2:*



35.     Between on or about May 11, 2021 and on or about June 5, 2022, Defendant Account A received 97 deposits, with an approximate value of $3,915,500.00. Included in these 97 deposits are the two transactions detailed above directly traceable to Victim 1's Bitstamp account.

36.     In addition, a forensic financial analysis of Defendant Account A discovered that the transaction history of this account exhibited common characteristics of money laundering. For example, on June 1, 2022, three transfers occurred which enabled 306,748 USDT to be moved from one Ethereum address to another Ethereum address all contained within Defendant Account A. Once again, on June 5, 2022, Defendant Account A received 83,835 USDT which can be directly traced to laundered funds from the same address as just a few days prior. Because the funds moved in a circular fashion, the transfers do not appear to have any legitimate

financial or business purpose. Thus, the funds received by Defendant Account A appear to be money laundering proceeds.

37.     Pursuant to a seizure warrant signed on November 30, 2022, by United States Magistrate Judge Leslie Hoffman Price, Case No. 6:22-mj-2235, the cryptocurrency remaining in Defendant Account A, valued at approximately $5,040,719.30, was transferred to a wallet owned and controlled by the United States Secret Service on March 9, 22, and April 5, 2023.

### *Laundering of Proceeds to Defendant Account B*

38.     Defendant Account B, held in the name of Chen Han Hsieh, was opened at the Binance cryptocurrency exchange on January 20, 2021, and contains cryptocurrency which is directly traceable on the Ethereum blockchain, to Victim 1's transactions associated with this scheme. In addition, Victim 1 was at no time ever told, nor did she give permission, for this individual to have access to her invested funds. The below picture was provided to Binance by the individual who opened Defendant Account B, as a part of Binance's global compliance procedures, specifically their KYC and AML, policies.



39.     According to documents provided by Bitstamp, on November 1, 2021, Victim 1 opened an account at Bitstamp, a cryptocurrency exchange. Starting on November 3, 2021, and continuing until March 3, 2022, at the direction of Hao, Victim 1 deposited $4,170,000.00 into her own Bitstamp account and used it to purchase Ethereum and USDT tokens.

40.     Specifically, one transaction from Victim 1's Bitstamp account, occurring on January 18, 2022, can be linked to funds presently in Defendant Account B. The illustration below demonstrates the movement of funds from the Victims' Bitstamp account to Defendant Account B. Each block of text along the arrows depicted below indicates a deposit into an address, whereas the arrows represent "hops" between addresses. "Hops" are transfers from one USDT address to another. The diagram below shows the transactions involving Victim ETH and USDT funds ending up at Defendant Account B after being comingled with other USDT while traversing over six additional transactions on the blockchain.

16



41.     Between on or about January 20, 2021 and on or about January 19,

2022, Defendant Account B received 54 deposits, with an approximate value of

$6,500,000.00. Included in these 54 deposits is one deposit for 30.755 ETH

(approximately $98,428 at the time of the deposit) which is directly traceable to

Victim 1's purchases from her Bitstamp account.

42.     In addition, a forensic financial analysis of Defendant Account B

discovered that the transaction history of this account exhibited common

characteristics of money laundering. Specifically, a large amount of passthrough

activity was observed in Defendant Account B. From April 11, 2022, until the

present, funds totaling the equivalent of $9,880,840 were withdrawn from Defendant

Account B. Of this amount, 76%, or $7,525,502 exhibited passthrough activity.

Passthrough activity can be summarized as moving money through numerous

intermediary addresses with little turn-around time for no apparent reason, prior to

17

the money being deposited at the final destination address. Thus, the funds received by Defendant Account B appear to be money laundering proceeds.

43.     Pursuant to a seizure warrant signed on November 30, 2022, by United States Magistrate Judge Leslie Hoffman Price, Case No. 6:22-mj-2236, the cryptocurrency remaining in Defendant Account B, valued at approximately $529,378.91 was transferred to a wallet owned and controlled by the United States Secret Service on February 24, 2023.

*Laundering of Proceeds to Defendant Account C*

44.     Defendant Account C, held in the name of Chun Li Tsao, was opened at the Binance cryptocurrency exchange on May 11, 2021 and contains cryptocurrency which is directly traceable on the Ethereum blockchain, to Victim 1's transactions associated with this scheme. In addition, Victim 1 told me that at no time was she ever told that, nor did she give permission for, this individual to have access to her invested funds. The below picture was provided to Binance by the individual who opened Defendant Account C, as a part of Binance's global compliance procedures, specifically their KYC and AML, policies.

18



45.     According to documents provided by Kraken, on January 14, 2022 Victim 1 opened an account at Kraken, a cryptocurrency exchange. Beginning on January 14, 2022 and continuing until February 7, 2022, at the direction of Hao, Victim 1 deposited $2,000,000.00 into her Kraken account and used it to purchase Ethereum and USDT tokens.

46.     Specifically, three transactions from Victim 1's Kraken account, occurring on January 18, 2022, January 19, 2022, and February 7, 2022, can be linked to funds presently in Defendant Account C. The illustration below demonstrates the movement of funds from Victim 1's Kraken account to Defendant Account C. Each block of text along the arrows depicted below indicates a deposit into an address, whereas the arrows represent "hops" between addresses. "Hops" are transfers from one USDT address to another. The diagram below shows the

19

transactions involving Victim ETH and USDT funds ending up at Defendant Account C after being comingled with other USDT while traversing over ten additional transactions on the blockchain.



47.     Between on or about May 11, 2021 and on or about June 13, 2022, Defendant Account C received 52 deposits, with an approximate value of $6,310,441.00. Included in these 52 deposits are three deposits totaling 310.52 ETH (approximately $970,748 at the time of the deposits) from Victim 1's Kraken account. All three of these ETH transactions are directly traceable to Victim 1's purchases from her Kraken account.

48.     In addition, a forensic financial analysis of Defendant Account C discovered that the transaction history of this account exhibited common characteristics of money laundering. Specifically, Defendant Account C exhibited a large amount of passthrough activity. From March 20, 2022 until present, 44% of the

funds withdrawn from Defendant Account C exhibited passthrough activity. Specifically, 44% of the funds withdrawn from Defendant Account C were moved through numerous addresses, some on the same date minutes apart, prior to them being sent to the final destination. In addition, Defendant Account C transacted with Defendant Account B numerous times from March 20, 2022, and June 13, 2022 by sending a total of 129,378 USDT. This relationship between Defendant Accounts B and C shows a likely affiliation between accounts and a greater probability that all the Defendant Accounts in this affidavit are involved in a large scale, organized crime scheme involving millions of dollars of laundered victim funds.

49.     Pursuant to a seizure warrant signed on November 30, 2022, by United States Magistrate Judge Leslie Hoffman Price, Case No. 6:22-mj-2237, the cryptocurrency remaining in Defendant Account C, valued at approximately $846,918.21, was transferred to a wallet owned and controlled by the United States Secret Service on March 1, 2023.

## CONCLUSION

50.     As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds are proceeds of wire fraud offenses, obtained in violation of 18 U.S.C. § 1343, and property involved in money laundering offenses in violation of 18 U.S.C. § 1956, and

are, therefore, subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and

(a)(1)(C).

Dated: April 14, 2023

                      Respectfully Submitted,

                      ROGER B. HANDBERG
                      United States Attorney

By:   s/Jennifer M. Harrington
                      JENNIFER M. HARRINGTON
                      Assistant United States Attorney
                      Florida Bar No. 0117748
                      400 W. Washington Street, Suite 3100
                      Orlando, Florida 32801
                      Telephone: (407) 648-7500
                      Facsimile: (407) 648-7643
                      EMail:Jennifer.Harrington2@usdoj.gov

## **VERIFICATION**

I, Thomas Johnson III, hereby verify and declare under penalty of perjury, that I am a Task Force Officer with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this __14__ day of April 2023.


Thomas Johnson III
Task Force Officer
United States Secret Service

# SAMMIS LAW FIRM
## A PROFESSIONAL ASSOCIATION

*Leslie M. Sammis*
*Jason D. Sammis*
*Joshua L. Monteiro*
*Katherine A. Aranda*
*Dominique G. Celerin*

1005 N. Marion Street
Tampa, FL 33602
(813) 250-0500 Office
(813) 276-1600 Fax
www.sammislawfirm.com

April 3, 2023

**VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION**

Delivered via USPS CERTIFIED MAIL - RETURN RECEIPT REQUESTED – 9414 8118 9876 5833 9433 37 and FEDEX - ADULT SIGNATURE REQUIRED

Drug Enforcement Administration (DEA)
Forfeiture Counsel
Asset Forfeiture Section
8701 Morrissette Drive
Springfield, VA 22152

| | |
|---|---|
| Case Number: | Unknown |
| Name: | Ciara Marion |
| Address: | 8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256 |
| Date of seizure: | 03/16/2023 |
| Seized property: | $22,000.00 in U.S. Currency |
| Location of Seizure: | Orlando International Airport, Orlando, FL |

Forfeiture Counsel,

Please be advised that I was retained as legal counsel for Ms. Ciara Marion to recover all of the U.S. Currency seized from her as referenced on Exhibit "A" which is approximately $22,000.00 in U.S. Currency. The money was taken from Ms. Marion at the Orlando International Airport in Orlando, FL, on March 16, 2023, by an agent or agents associated with Drug Enforcement Administration (DEA).

My client demands early judicial intervention through court action. Please refer the matter to the U.S. Attorney's Office for a preliminary determination of whether the detention, interrogation, search, and seizure was illegal under the Fourth Amendment of the United States Constitution, whether the agent lacked probable cause that the seized property was the proceeds of unlawful

*Phone (813) 250-0500 · Facsimile (813) 276-1600*

activity under 18 USC 981(a)(1)(C), 18 USC 1956(c)(7), or 18 USC 1961(1), and whether sufficient evidence now supports the allegation.

In compliance with 18 U.S.C. 983(a)(2)(A), find the attached "VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION" Form. Attached as Exhibit "B".

Please be advised that video surveillance recordings and other evidence in possession of the DEA and the Government would show the illegal nature of the detention, interrogation, search and warrantless seizure. I am asking that you obtain and preserve such evidence specifically including any video surveillance recordings of my client, any TSA agent or airport worker that reported my client was carrying U.S. Currency, and any agent involved in the detention, interrogation, search or warrantless seizure.

Please confirm that you received this verified notice and that the matter has been referred to the United States Attorney's Office.

All correspondence regarding this matter should be addressed to my office.

Respectfully submitted,

/s/ *Leslie M. Sammis*
Leslie M. Sammis

ENCLOSURE(S): (A) Receipt, (B) Verified Claim

LMS/tb

2023 APR -5 PM 3: 06

Exhibit "A"

2023 APR -5 PM 3:06

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (Including ZIP CODE), if applicable)

Ciara Calyx Marion
8283 Bymeadows RD E, Apt 1110
Jacksonville FL 32256
(904) 337-7075 ③

| FILE NO. | | G-DEP IDENTIFIER |
|---|---|---|
| FILE TITLE | | |
| DATE 03/16/2023 | | |

DIVISION/DISTRICT OFFICE
DEA Orlando D.O.
300 International Pkwy. Suite 424
Heathrow, FL 32746      407-333-7000

I hereby acknowledge receipt of the following described cash or other item(s)
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | P(URPOSE (If Applicable) |
|---|---|---|
| 1 | Unknown amount of money | Evidence |
| | *Nothing To Turn's* | |

2023 APR -5 PM 3:06

RECEIVED BY (Signature)

NAME AND TITLE (Print or Type)
Ciara Dean TFO

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
J. McFadden Agent MBT

(R-02) Previous editions obsolete

Electronic Form Version Designed in JetForm 5.

Exhibit "B"

2023 APR -5 PM 3: 06

## VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION Form

Case Number:              Unknown
Name:                     Ciara Marion
Address:                  8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256
Date of seizure:          03/16/2023
Seized property:          $22,000.00 in U.S. Currency
Location of Seizure:      Orlando International Airport, Orlando, FL

Forfeiture Counsel,

My name is Ciara Marion. My address is 8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256. I have retained Leslie M. Sammis and Sammis Law Firm to represent me in this matter. Please provide any future notices and communications to my attorney. I hereby authorize the seized property to be returned to my attorney, Leslie M. Sammis, Sammis Law Firm, 1005 N. Marion St., Tampa, FL, 33602.

As authorized by 18 USC 983(a)(2)(A), I hereby file this claim for all of the U.S. Currency seized from me that is referenced in the receipt (attached as Exhibit "A") which is approximately $22,000.00 (hereinafter "seized property") that was seized from me on March 16, 2023, at the Orlando International Airport by an agent associated with the Drug Enforcement Administration (DEA).

I have an interest in the seized property because it belongs to me. I am the owner of the seized property. I have a possessory interest in the seized property. I am legally entitled to possess the seized property, and I have the right to exercise dominion and control over the seized property. This claim is not frivolous.

Pursuant to 18 USC 983(a)(3)(A), I am hereby demanding that the Government either return the seized property to me or initiate Judicial Forfeiture Proceedings by filing a complaint within ninety (90) days of the date this claim was filed.

**Attestation and Oath**

I attest and declare under penalty of perjury that this information provided in support of my claim is true and correct to the best of my knowledge and belief.

c. Marion                        03-29-2023
Signature                        Date
Ciara Marion

A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 USC 1001 AND/OR 1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.

Envelope

FedEx

ORIGIN ID:KYOA    (813) 250-0500
LESLIE SAMMIS

1005 N. MARION STREET

TAMPA, FL 33602
UNITED STATES US

SHIP DATE: 03APR23
ACTWGT: 1.00 LB
CAD: 107714867/INL

BILL SENDER

TO  **FORF COUNSEL/ASSET FORF SECTION**
**DRUG ENFORCEMENT ADMINISTRATION**
**8701 MORRISSETTE DRIVE**

**SPRINGFIELD VA 22152**
(000) 000-0000        REF
INV
PO                        DEPT




FedEx Ship Manager - Print Your Label(s)

FedEx Express

E

WED - 05 APR 10:30A
MORNING 2DAY

TRK#  **7717 3481 5200**
0201

22152
IAD
VA-US

**TE ZFOA**



4/3/23. 8:05 AM

RECEIVED #4
APR 05 2023

Sammis Law Firm P.A.
1005 N MARION ST
TAMPA FL 33602-3404

2023 APR -7  PM 2:36

**USPS CERTIFIED MAIL**

9414 8118 9876 5833 9433 37

Drug Enforcement Administration
Forfeiture Counsel/Asset Forfeiture Section
8701 MORRISSETTE DR
SPRINGFIELD VA 22152-1080

$7.09    US POSTAGE
FIRST-CLASS
Apr 03 2023
Mailed from ZIP 33602
2 OZ FIRST-CLASS MAIL LETTER
RATE
11923275



062S0012913542

stamps
endicia

# SAMMIS LAW FIRM
## A PROFESSIONAL ASSOCIATION

*Leslie M. Sammis*
*Jason D. Sammis*
*Joshua L. Monteiro*
*Katherine A. Aranda*
*Dominique G. Celerin*

1005 N. Marion Street
Tampa, FL 33602
(813) 250-0500 Office
(813) 276-1600 Fax
www.sammislawfirm.com

April 3, 2023

### VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION

Delivered via USPS CERTIFIED MAIL - RETURN RECEIPT REQUESTED – 9414 8118 9876 5833 9433 37 and FEDEX - ADULT SIGNATURE REQUIRED

Drug Enforcement Administration (DEA)
Forfeiture Counsel
Asset Forfeiture Section
8701 Morrissette Drive
Springfield, VA 22152

| | |
|---|---|
| Case Number: | Unknown |
| Name: | Ciara Marion |
| Address: | 8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256 |
| Date of seizure: | 03/16/2023 |
| Seized property: | $22,000.00 in U.S. Currency |
| Location of Seizure: | Orlando International Airport, Orlando, FL |

Forfeiture Counsel,

Please be advised that I was retained as legal counsel for Ms. Ciara Marion to recover all of the U.S. Currency seized from her as referenced on Exhibit "A" which is approximately $22,000.00 in U.S. Currency. The money was taken from Ms. Marion at the Orlando International Airport in Orlando, FL, on March 16, 2023, by an agent or agents associated with Drug Enforcement Administration (DEA).

My client demands early judicial intervention through court action. Please refer the matter to the U.S. Attorney's Office for a preliminary determination of whether the detention, interrogation, search, and seizure was illegal under the Fourth Amendment of the United States Constitution, whether the agent lacked probable cause that the seized property was the proceeds of unlawful

*Phone (813) 250-0500 · Facsimile (813) 276-1600*

activity under 18 USC 981(a)(1)(C), 18 USC 1956(c)(7), or 18 USC 1961(1), and whether sufficient evidence now supports the allegation.

In compliance with 18 U.S.C. 983(a)(2)(A), find the attached "VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION" Form. Attached as Exhibit "B".

Please be advised that video surveillance recordings and other evidence in possession of the DEA and the Government would show the illegal nature of the detention, interrogation, search and warrantless seizure. I am asking that you obtain and preserve such evidence specifically including any video surveillance recordings of my client, any TSA agent or airport worker that reported my client was carrying U.S. Currency, and any agent involved in the detention, interrogation, search or warrantless seizure.

Please confirm that you received this verified notice and that the matter has been referred to the United States Attorney's Office.

All correspondence regarding this matter should be addressed to my office.

Respectfully submitted,

/s/ *Leslie M. Sammis*
Leslie M. Sammis

ENCLOSURE(S): (A) Receipt, (B) Verified Claim

LMS/tb

Exhibit "A"



2023 APR -7 PH 36

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION

## RECEIPT FOR CASH OR OTHER ITEMS

TO: (Name, Title, Address (including ZIP CODE), if applicable)

Ciara Calix Maria
8293 Bymeadows XDE pt 1117
Jacksonville FL, 32256
(904) 227-7275

FILE NO.

FILE TITLE

DATE 03/16/2022

DIVISION/DISTRICT OFFICE

DE4 Orlando D.O.
300 International Hwy, Suite 1121
Maitroad, FL 32716 — 407-333-7000

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | Unknown amount of money | Evidence |

Nothing Follows

2022 APR -7 PM 2:36

RECEIVED BY (Signature)

WITNESSED BY (Signature)

NAME AND TITLE (Print or Type)
Grant Ivan TFO

NAME AND TITLE (Print or Type)
J. McFadden Agent MRT

-2 (R-02) Previous editions obsolete

Electronic Form Version Designed in JetForm 5.2

Exhibit "B"

2023 APR -7 PM 2: 36

## VERIFIED CLAIM FOR THE RETURN OF SEIZED PROPERTY, REFERRAL TO THE U.S. ATTORNEY'S OFFICE, AND DEMAND FOR COURT ACTION Form

| | |
|---|---|
| Case Number: | Unknown |
| Name: | Ciara Marion |
| Address: | 8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256 |
| Date of seizure: | 03/16/2023 |
| Seized property: | $22,000.00 in U.S. Currency |
| Location of Seizure: | Orlando International Airport, Orlando, FL |

Forfeiture Counsel,

My name is Ciara Marion. My address is 8283 Baymeadows Road E., Apt 1110, Jacksonville , FL 32256. I have retained Leslie M. Sammis and Sammis Law Firm to represent me in this matter. Please provide any future notices and communications to my attorney. I hereby authorize the seized property to be returned to my attorney, Leslie M. Sammis, Sammis Law Firm, 1005 N. Marion St., Tampa, FL, 33602.

As authorized by 18 USC 983(a)(2)(A), I hereby file this claim for all of the U.S. Currency seized from me that is referenced in the receipt (attached as Exhibit "A") which is approximately $22,000.00 (hereinafter "seized property") that was seized from me on March 16, 2023, at the Orlando International Airport by an agent associated with the Drug Enforcement Administration (DEA).

I have an interest in the seized property because it belongs to me. I am the owner of the seized property. I have a possessory interest in the seized property. I am legally entitled to possess the seized property, and I have the right to exercise dominion and control over the seized property. This claim is not frivolous.

Pursuant to 18 USC 983(a)(3)(A), I am hereby demanding that the Government either return the seized property to me or initiate Judicial Forfeiture Proceedings by filing a complaint within ninety (90) days of the date this claim was filed.

**Attestation and Oath**

I attest and declare under penalty of perjury that this information provided in support of my claim is true and correct to the best of my knowledge and belief.

_c. Marion_
Signature
Ciara Marion

_03-29-2023_
Date

**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 USC 1001 AND/OR 1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**

